Good morning, Your Honors. May it please the Court, I am Hillary Arrowbooth, appearing here for Appellant EZ Mailing Services, Inc. EZ Mailing brings this appeal to demonstrate the trial court's error in granting summary judgment in light of the evidence presented and the questions of fact raised by that evidence. Your Honors, I'd like to begin with addressing a few of the cases that were raised by the appellee, Genco, in its brief. Can I just ask you a question to start? Sure. So, as I understand the theory of your case, you were alleging an oral contract. Correct, Your Honors. All right. An oral contract evidenced by emails and conduct of the press. And as I understand what the district court determined, it was that the evidence that you presented did not establish the existence of an oral contract. Is that right? Correct, Your Honor. That is the decision made by the trial court. So, from that I take it that you never argued that the email correspondence was evidence of a written contract. Your Honor, it is an unclear factual situation. We did not make that argument because That argument is off the table. We did not argue in the lower court that there was a written contract because we do not have a document signed by Genco. We do have emails from representatives of Genco confirming the terms of the agreement under which these two businesses were operating. And this situation, to me, is kind of a classic situation where you have two businesses who work together where they speak to each other and then they email intermittently where you don't have one document with all the terms laid out and signed. So, this is a situation where Easy, I guess, orally communicated by phone? There were communications. In fact, Genco acknowledged that because Genco acknowledged in its brief that it was hired by Easy Mailing. They had a discussion by the phone? I don't know if Genco specifically says via phone, but my client says that there were oral communications that Genco, again, acknowledges being hired. So, like I said, Genco didn't just wake up one morning and decide to arrange for the shipment of this Forever 21 clothing. I understand that, but was there any evidence that the parties had a telephone conversation where they basically agreed to the elements of what was going to happen and then they sent a confirming email? My client testified in declaration that he understood an oral contract existed based upon communications. The communications, unfortunately, nobody was able to testify. You know, I said this, he said that. But then we have the follow-up emails which refer to conversations, you know, saying, as we discussed, Genco ensures $100,000. No, it says Genco is going to use preferred carriers. It does. That is the specific language following the statement, we have an agreement, you and I. However, there are other emails, Your Honor, that Genco authored which say, we insure $100,000 of cargo liability. My client, Mr. Argywell, asked whether he or his business could be put on as an additional insurer. He was told by the Genco representative that is not necessary. The paperwork that we have insures $100,000 in applicable cargo insurance. So you are correct, Your Honor, the words following the word agreement seem to narrow that. But when we take all of the emails together and Mr. Argywell's declaration, which kind of fill in this admittedly unclear situation. EASY did pay out. Excuse me? EASY did pay out in this case. Absolutely. And then EASY sued Oracle in the lawsuit. Correct. EASY got the money back from Oracle? No, Your Honor. EASY received a summary judgment. Our summary judgment motion was granted against Oracle. Oracle promptly filed for bankruptcy. And to this date, not a penny has been collected. My client has paid in full Forever 21, who was the shipper, and is now looking to get recovery from the responsible party. Now, Genco, of course, claims that it is not responsible because it had no obligation to get insurance, has no obligation for the freight whatsoever once it retained the services of a licensed motor carrier, Oracle. However, that is not what the cases say. If we look to three of the primary cases cited by Genco in support of its position that it simply has no liability, these cases don't support that. If we look at Travelers' Indemnity Company versus Alliance Shippers, and these three cases are towards the very end of Genco's brief, the issue there was whether Alliance Shipper was a freight forwarder or a broker. It was not looking at what a broker's liability was. It was looking at whether Alliance was liable under the CARMAC amendment, which it was not. We're not claiming Genco is liable under the CARMAC amendment. We're claiming Genco is liable under a contract, and none of the cases provided by Genco undercut that position. In fact, the Chubb Group of Insurance Companies versus H.A. Transportation Systems case specifically provides that brokers may be held liable under state contract law. So there is nothing that novel that we're trying to do. We're not trying to create a new type of liability. We're simply applying state contract law to this agreement. Admittedly, Your Honors, the agreement is convoluted and is not nearly as clear as I wish it had been. Like I said, there is no writing setting everything out. But if you look at the totality of the evidence, we believe that easy mailing at a minimum presented material questions of fact that preclude the granting of summary judgment in this case. So I guess I'm still concerned about what the district court did here, the way the district court viewed this. The district court basically said there's no evidence that there was an oral communication. Correct, Your Honor. So is your argument that the e-mail transmissions are tantamount to calling somebody up on the phone and having a discussion with them? Is that your argument? The e-mail transmissions evidence the fact and, in fact, refer to discussions. They are discussions in the way they are used. As you read them between the parties, they are a back and forth. They are the equivalent of a telephone call. Do you have any cases that say that? No, Your Honor. Again, it is the way companies do business, which unfortunately does not fit neatly within the parameters of law. However, what is clear, there was an offer, there was acceptance, there was performance. All these folks are insured, aren't they? Your Honor, my client is not insured. My client paid the shipper. I just asked you a question, that's all. Your client was not insured. Correct, Your Honor. Correct, Your Honor. Oracle's insurance company denied coverage. Okay. I'll give you a minute for rebuttal. We hear from the other side. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Edmund Farrell, appearing on behalf of Appley Genco Transportation Management. Your Honor, on the record in this case, it is abundantly clear that the district court was correct in holding that there was no evidence of an oral contract between these parties. And that is what is being sued on. There were other causes of action brought against my client in the initial complaint, which were dismissed by way of a 12B6 motion and are not the subject of this appeal. In the First Amendment complaint, we are left with an oral contract cause of action. The district court was correct in finding that there was no oral contract formed or no evidence of the formation of an oral contract in this situation between Easy Mailing and my client, Genco Transportation. So what do the e-mails show? What is one to take from the e-mails? Well, the e-mails can show that there was a mere negotiation of terms between the parties. They don't. If you put them all together, do they add up to offer an acceptance of performance? I don't think so, Your Honor, because they're negotiations going back and forth. You can see that each of the e-mails are addressing specific facts, not the totality of the agreement between the parties. So do the e-mails contemplate a signed written agreement at some point? I can't tell you that, Your Honor. The record isn't clear on that at all. And it certainly does not support their contention that there was an oral contract formed between these parties. Do you think e-mail communications can serve as a tantamount to an oral agreement? No, Your Honor, I don't. I think it's a written communication. But maybe we ought to have a new law that e-mail, this is a contract by e-mail. Well, I don't think that's the issue before this court right now. We're talking about an oral contract, Your Honor. I'm just trying to understand the case. I understand, Your Honor. I'm just trying to understand what the district court did. Well, the district court found that there was no evidence of an oral contract. Well, then on this record, what's the scope of GENCO's responsibilities? On this record, Your Honor, there's no oral contract between the parties. Well, what is the scope of GENCO's responsibility? What's GENCO going to be paid to do? To get a company to transport the goods and to have a certain amount of insurance coverage for the load. And there you go, Your Honor. I mean, if you want to step back and go take another look at what the breach is, there is no breach. You look at their person most knowledgeable who testified. She says GENCO didn't do anything wrong. There was no breach. They got a carrier that had the insurance. The fact that that carrier's insurance company denies coverage because of a certain exclusion in that policy does not mean that my client, GENCO, breached any agreement between it and Easy Mailing. But look at Mrs. Lopez's deposition testimony. GENCO did nothing wrong, period. End of sentence. End of report. End of case. GENCO did everything it was supposed to do. End of case. So even if Your Honors were to find that there was possibly an oral contract, which I am not saying that there was, there certainly is no breach. In fact, the evidence is directly to the contrary. Now, they came back in after the fact and tried to change Mrs. Lopez's testimony from yes to no to yes, they did everything right, to no, they did everything wrong. We filed objections to that change in testimony, and that objection was sustained. And the briefs of Easy Mailing do not attack the court's ruling on that objection to Mrs. Lopez's deposition testimony. So we're left with GENCO did nothing wrong. Unless the court has any other questions. What's Oracle's condition today? I have no idea, Your Honor. I have no idea. I understand that they're in bankruptcy, but I do not know what their position is in this case. And their carrier denied coverage. That's correct, Your Honor, on an exclusion because the driver left the load unattended. They also had an exclusion from 6 p.m. to 6 a.m. or something. That's correct. When did the theft take place? I don't know that off the top of my head, Your Honor. And it was GENCO that hired the driver. No, Your Honor, we hired Oracle. You hired Oracle. To move the load for them. So GENCO hired Oracle. Oracle was at fault to its driver. The insurance policy had an exclusion if the vehicle was left unattended and the trailer was hijacked or taken away. And so Oracle was left without insurance. Your client got stuck. My client didn't get stuck. Easy Mailing got stuck. Stuck is not really the right word, but Easy Mailing has a judgment of $200,000 against Oracle that apparently they can't collect. Very complex picture here. You're saying your role was limited to be the go-between between Easy Mailing and Oracle. Exactly, Your Honor. And that's what you were getting paid to do which is to go out and get a carrier who had a driver and a truck to take care of the shipment. Yes, Your Honor. Okay. Thank you, Your Honors. Thank you. Thank you for your argument. We have a minute for rebuttal here. Thank you, Your Honors. I would like to make three very brief points. Number one, counsel just acknowledged that GENCO had the obligation to get a carrier with insurance of a certain amount. That amount was $100,000. The policy, Your Honors have asked questions about the exclusions, but the most important thing in that policy is there's a sub-limit. The sub-limit applied to this very shipment which was known to everybody to be clothing. It was wearing apparel. There is a sub-limit that made this policy $50,000, not $100,000 for this shipment which directly breaches the agreement that counsel just acknowledges was made or the obligation that GENCO had. With respect to the testimony of our PMK, if we look at the question... GENCO had the obligation before bringing Oracle into the picture to review their insurance policies. Yes, Your Honor, and in fact, we have provided case law that says a party is not entitled to rely upon a certificate of insurance. The certificate of insurance does not. It is just evidence that there's a policy. GENCO took on more responsibility to make sure that policy was $100,000 applicable to this load. The case law is very clear that they cannot rely on the certificate to do that. With respect to the PMK's testimony, if you look closely at the actual question, the question took out information discussed with an attorney. The question was limited. It was other than what was discussed or told to you by an attorney. The witness is a lay witness and cannot be held to know what she can state and what she can't when the question is convoluted and limited. And finally, Your Honors, GENCO stands before you claiming that there was no contract, yet it was hired to do a service, it did a service, and I can assure you that if my client failed to pay GENCO, GENCO would probably be the first one running into court claiming that there was, in fact, a contract so that it could get paid. Then maybe you'd be arguing that it was... And perhaps I would. Thank you, Your Honors. Oral or otherwise. But the court found there was no contract. Correct. The trial court found there was no contract, and our position is that was error for two reasons. One, because the evidence showed a contract, and two, because there were significant questions of material fact. Okay. Thank you, counsel. We appreciate your arguments this morning. The matter is submitted.
judges: Pregerson, Paez, Nguyen